CHIASSON, Judge.
Gonzales Manufacturing & Industrial Machine Works, Inc., plaintiff-appellant, appeals the trial court’s judgment which held it and the defendant-appellee, Hilton J. Hoover, Sr., to be co-owners in indivisión in the proportion of an undivided one-half interest each in certain described real estate and in various items of movable property located thereon.
This action originated with plaintiff filing a suit for dissolution of the sale of two pieces of property on the basis of non-payment of the purchase price. “Lot Number One” was declared to be the property of the plaintiff pursuant to its motion for summary judgment. The other piece of property (hereinafter referred to as “Lot Number Four”) is the subject matter of this litigation and is fully described hereafter.
Plaintiff-appellant’s suit asks the court: to declare it to be the owner of said lot; to give it a $38,000 credit for all of the money, material and labor it expended in the construction of a metal building located thereon; to declare it to be the owner of said metal building and certain equipment and machinery; to condemn the defendant-ap-pellee to pay $78,336 in itemized damages suffered by the plaintiff-appellant and reasonable attorney fees; and to prohibit the *360 defendant from using a deceptively familiar corporate name.
Defendant-appellee answered the suit alleging that the sale of Lot Number Four was executed in return for the plaintiff-appellant acquiring an interest in a new business (to be called Gonzales Industrial Valve, Incorporated) to be constructed on the property. In reconvention, defendant-appellee alleges: that the business was erected almost entirely with his labor, materials and finances; that all of the movable equipment was supplied and/or built by him; that the plaintiff-appellant was supposed to use its connections to acquire industrial valve business which, following the opening, it did not do; that he has over $75,000 invested and has suffered damages in the amount of $193,800.00.
A third party demand was filed by Hilton J. Hoover, Sr. against Gonzales Industrial Valve, Incorporated, alleging that Gonzales Industrial Valve, Incorporated is primarily liable for any services rendered in connection with Lot Number Four since subsequent to the sale of Lot Number Four, Hilton J. Hoover, Sr. agreed with Hoover Construction Company to erect and outfit a building on said lot. As a result of the benefit to Gonzales Industrial Valve, Incorporated, it is liable to him for any services rendered in connection with erecting a building on Lot Number Four.
Hoover Construction Company, owned by Hilton J. Hoover, Sr., intervened alleging that it purchased a steel building located on a different site and then used its resources to disassemble and transport it to Lot Number Four. Its work crews and equipment were used to design and build valve repair equipment and prepare the building and its contents for a valve repair business. Hoover Construction Company lists its expenses as $161,101.71.
A cash sale in the form of an authentic act was passed in July of 1974, purportedly transferring Lot Number Four from Gonzales Manufacturing & Industrial Machine Works, Inc., to Hilton J. Hoover, Sr. From very confusing and inconsistent testimony we find that Hilton found an old airplane hanger and with the agreement of his brother, Leon, President of Gonzales Manufacturing & Industrial Machine Works, Inc., that the building would be good for the valve repair shop, the building was bought in November of 1974 and moved onto Lot Number Four in July of 1975 by defendant-appellee.
The testimony of the brothers, Leon and Hilton, indicates that it was mutually agreed and the intent of both men for Leon to provide the property and Hilton to provide the building for the purpose of starting a valve business. This agreement was perfected with the sale of the property to Hilton Hoover and the purchase of the building to be used on the property.
The building was refurbished, machinery was bought, repaired and built, at the expense, time and labor of the plaintiff and the defendant. Hilton testified that Leon authorized him to incorporate the business and he thereafter employed an attorney to prepare the necessary papers. Around November of 1976, when he brought Leon the papers to sign, the plan to start the valve business together deteriorated.
All of the parties agree that the breaking point between the two brothers occurred at this time when they could not agree on the percentage of shares of stock the parties would own. Gonzales Manufacturing & Industrial Machine Works, Inc. filed the present suit in February of 1977 alleging that Hilton has not paid the purchase price of Lot Number Four and it is entitled to be declared owner of said property.
The trial court held the parties to be co-owners in indivisión in the proportion of an undivided one-half interest each in and to Lot Number Four and the various items of movable property located thereon, and dismissed all of the other claims. Plaintiff-appellant perfected the instant appeal.
On appeal, plaintiff-appellant contends that the trial court failed to dissolve the alleged sale of Lot Number Four from Gonzales Manufacturing & Industrial Machine Works, Inc. to Hilton J. Hoover, Sr. and failed to recognize it as the sole owner of *361 said property. Defendant-appellee answered the appeal alleging that the trial court failed to declare Hilton J. Hoover, Sr. to be the sole owner of the property in question and failed to award him the damages prayed for.
“As between the parties, the general rule with reference to joint adventures or special partnerships is that the relationship arises only where the parties intended to associate themselves as such.” Daspit v. Sinclair Refining Co., 199 La. 441, 6 So.2d 341 (1942). See also Walker v. Delahoussaye, 116 So.2d 884 (La.App. 1st Cir. 1959) and Hero & Company v. Farnsworth & Chambers Co., 236 La. 306, 107 So.2d 650 (1958).
“There are no hard and fast legal rules fixing the requisites for a joint venture; each case must be considered sui generis and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a ‘joint venture’.” Hero & Company v. Farnsworth & Chambers Co., supra.
The specific facts of our case indicate that the parties involved had an implied contract[1] to enter into a joint venture, the specific nature of which was to be a valve business. The parties themselves testified that they discussed the venture in great length and that they took steps to complete said venture, both expending time, energy, skill and money, individually and through their respective corporations. The parties always agreed that they would share in the profits and losses of their contemplated business, but it was not until November of 1976 that they could not agree as to the exact percentage each would have in said venture. It is at this point in time that the venture ceased, i.e., no agreement. Up until this time their actions were that of a joint venture and as owners in indivisión of the entire project. As found by the trial judge, although neither side kept very accurate records which would substantiate the exact contribution which each made to the venture pursuant to their contract or agreement, a fair approximation of all of the records is that the contributions of both were roughly equal. Therefore, the trial court was correct in dividing the property in half with each owning one-half in indivi-sión.
For these reasons the judgment of the District Court is affirmed at appellant’s costs and Gonzales Manufacturing & Industrial Machine Works, Inc. and Hilton Hoover, Sr. are declared to the owners in indivi-sión, in the proportion of an undivided one-half (V2) interest each, of the following ’described properties, to-wit:
(1) A certain tract or parcel of land, together with all buildings and improvements thereon or thereunto belonging, situated in the Parish of Ascension, in the Northeast Quarter of Section 20, Township 10 South, Range 3 East, Southeastern District of Louisiana, being more particularly described as Lot Four (4) of Gonzales Industrial Park, said Lot 4 being more particularly described as commencing at the northeast corner of vendor’s property, thence proceed in a southerly direction a distance of 167 feet to a point and corner; thence proceed in a westerly direction a distance of 300 feet to the point of beginning; thence proceed in a westerly direction along a street a distance of 100 feet to a point and corner; thence proceed in a northerly direction a distance of 155 feet to a point and comer; thence proceed in an easterly direction 100 feet to a point and corner; thence in a southerly direction a distance of 155 feet to the point of beginning. Said Lot 4 being bounded on the north by a 12 foot servitude along vendor’s northern boundary, a street on the south, Lot 3 on the east, and Lot 5 on the west.
*362 (2) Together with all items of movable property located thereon and as described in the pleadings herein.
AFFIRMED.

.Louisiana Civil Code Article 1779 provides:
“Four requisites are necessary to the validity of a contract:
1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose.”